**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**CORNELIUS MAHAR** and
**MAUREEN MAHAR,**

|  |  |  |
|---|---|---|
| | **Plaintiffs,** | **1:06-cv-1297** |
| | | **(GLS\RFT)** |
| **v.** | | |

**US XPRESS ENTERPRISES, INC.;**
**US XPRESS LEASING, INC.;**
**XPRESS GLOBAL SYSTEMS, INC.;** and
**GLORIA V. MORGAN,**

            **Defendants/Third-Party Plaintiffs,**

        **v.**

**POLSINELLO FUELS** and
**POLSINELLO FUELS, INC.,**

            **Third-Party Defendants.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFFS:** | |
| Flink, Smith Law Firm | EDWARD FLINK, ESQ. |
| 23 British American Boulevard | CHRISTOPHER GUETTI, ESQ. |
| Latham, NY 12110 | JENNIFER L. DOMINELLI-LECAKES, ESQ. |
| | |
| **FOR THE DEFENDANTS:** | |
| Rawle, Henderson Law Firm | DIANE BECKMAN CARVELL, ESQ. |
| 14 Wall Street | JON M. DUMONT, ESQ. |
| 27th Floor | JAMES A. WESCOE, ESQ. |
| New York, NY 10005 | |

Baker, Donelson Law Firm                KENNETH S. POWERS, ESQ.
1800 Republic Centre
633 Chestnut Street
Chattanooga, TN 37450

**FOR THE THIRD-PARTY DEFENDANTS:**
Thuillez, Ford Law Firm                DONALD P. FORD, JR., ESQ.
20 Corporate Woods Boulevard
6th Floor
Albany, NY 12211-1715

**Gary L. Sharpe**
**District Court Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiffs Cornelius and Maureen Mahar brought this action against

US Xpress, Inc., US Xpress Enterprises, Inc., US Xpress Leasing, Inc.,

Xpress Global Systems, Inc., and Gloria Morgan for injuries and damages

sustained in a tractor-trailer accident.  (Am. Compl., Dkt. No. 5.)  US

Xpress and Morgan filed a counterclaim against Cornelius Mahar, (Dkt. No.

8), and a third-party complaint against Polsinello Fuels and Polsinello

Fuels, Inc., (3d-Party Am. Compl., Dkt. No. 24).  Pending are: Polsinello's

motions for partial summary judgment and summary judgment; Morgan's

motion for summary judgment; US Xpress and Morgan's motion for

summary judgment; US Xpress's motion for summary judgment; and the Mahars' motions for summary judgment, leave to amend, and sanctions.

For the reasons that follow: (1) Polsinello's motion for partial summary judgment, (Dkt. No. 109), is granted insofar as US Xpress's claim for New York State cleanup costs is dismissed, but is denied as to US Xpress's claims for towing, storage, and loss of use damages; (2) Polsinello's motion for summary judgment, (Dkt. No. 111), is granted insofar as "Polsinello Fuels" is dismissed from the action and US Xpress and Morgan's claim for negligent hiring, training, and supervision is dismissed, but is denied as to the claims of negligence and vicarious liability; (3) Morgan's motion for summary judgment for improper service, (Dkt. No. 113), is denied; (4) US Xpress and Morgan's motion for summary judgment, (Dkt. No. 114), is denied as to the claims of negligence, vicarious liability, and negligent hiring, training, and supervision; (5) US Xpress's motion for summary judgment, (Dkt. No. 115), is granted and US Xpress Enterprises, US Xpress Leasing, and Xpress Global Systems are dismissed from the action; (6) the Mahars' motion for summary judgment, (Dkt. No. 116), is denied as to the claims of negligence and vicarious liability; (7) the Mahars' motion for leave to amend is granted; and (8) the

Mahars' motion for sanctions is denied.

## II. <u>Background</u>

### A.   <u>Facts</u>

Defendant Gloria Morgan began her employment with defendant US Xpress, Inc. on November 12, 2004.  (*See* Pl. SMF ¶ 6, Dkt. No. 117:65.) Beginning on December 22, 2004, after obtaining her Commercial Driver's License (CDL) and receiving in-class and on-the-road training and testing, Morgan operated a 2004 Freightliner tractor numbered 40035, which was maintained by US Xpress.  (*See* Def. Resp. SMF ¶¶ 1-2, 51-60, Dkt. No. 132:2.)  On January 3, 2005, Morgan was driving tractor 40035 with a trailer in tow on Interstate 87 South when she saw smoke in the front of her truck.  (*See id.* at ¶ 9.)  In response, Morgan pulled her tractor into a rest stop and performed a "pre-trip" inspection of her engine.  (*See* Morgan Dep. at 92, Dkt. No. 117:5.)  After checking the tractor's engine, underside, and interior, and finding no smoke or other apparent problems, Morgan departed from the rest stop.  (*See id.* at 92, 97.)  Within thirty minutes of getting back on I-87, as Morgan was proceeding up a hill in Essex County, her tractor began slowing down and the "engine protect" light began to blink.  (*See id.* at 113.)  Morgan then merged from the middle lane into the

4

rightmost lane of the highway, after which the engine light turned solid and the tractor stopped.  (*See id.*)  After coming to a stop in the right lane of traffic, Morgan turned on her hazard lights, called in the situation to Qualcomm, and exited the passenger side of the tractor, allegedly to put out hazard triangles.  (*See id.* at 117-18.)

Immediately thereafter, Cornelius Mahar, who was driving a 1994 International tractor numbered 594 in the rightmost lane of I-87 South, collided with Morgan's tractor-trailer.  (*See* Polsinello SMF ¶¶ 6, 29, Dkt. No. 111:9.)  At that time, Mahar[1] was in the course of his employment with Polsinello Fuels, Inc., which owned tractor 594 and the fuel tanker in tow. (*See id.* at ¶¶ 4-7.)  According to Mahar, he began driving tractors in 1969, and since then logged two- to three-million miles pulling trailers and tankers.  (*See id.* at ¶ 31.)  As to tractor 594, Mahar had operated it since 1994.  (*See id.* at ¶ 29.)  During his employment with Polsinello, Mahar also trained and verified new drivers in loading and hauling fuel tankers.  (*See id.* at ¶ 33.)

As to the conditions at the time of the accident, Morgan testified that

---

[1]As evidenced by the New York Driver Record Service Report, Mahar had a Class A CDL with endorsements for tanks and hazmat.  (*See* Bookmyer Aff., Dkt. No 111:6.)  In addition, this Record Service Report did not reveal any violations or suspensions of Mahar's license or any prior accidents.  (*See id.*)

she did not notice any fog or weather conditions that would have affected her visibility.  (*See* Morgan Dep. at 117, Dkt. No. 117:5.)  However, several individuals testified to encountering heavy fog precisely where Morgan's tractor-trailer had stopped, limiting the visibility in the area to between twenty and sixty feet.  (*See* Tuz Dep. at 21-22, Dkt. No. 117:20; Nichols Dep. at 19-20, 28-30, Dkt. No. 117:21.)  And according to Patricia Bashaw, an emergency medical technician (EMT) who was one of the first responders, she was "stunned" by how fast the fog came on as she approached the accident.  (*See* Bashaw Dep. at 23-25, Dkt. No. 117:22.)

Upon arriving at the scene, Bashaw found Mahar in critical condition. (*See id.* at 27-30.)  Bashaw and Leslie Fleury, another EMT, transported him to Elizabethtown Community Hospital, and then to Fletcher Allen Healthcare in Burlington, Vermont.  (*See id.* at 27-44.)  As a result of the collision, Mahar suffered serious injuries, though the extent of those injuries are in dispute.  (*Compare* Pl. SMF ¶ 13, Dkt. No. 117:65, *with* Def. Resp. SMF ¶ 13, Dkt. No.132:2.)

## B.   Procedural History

On June 13, 2006, Mahar, and his wife, Maureen Mahar, filed suit against US Xpress Enterprises, Inc., US Xpress Leasing, Inc., Xpress

Global Systems, Inc., and Morgan, in New York State Supreme Court, Rensselaer County, alleging negligence resulting in injuries to Mahar and derivative injuries to Maureen Mahar.  (*See* Dkt. No. 1.)  On October 25, the action was removed to the United States District Court for the Northern District of New York based on diversity jurisdiction under 28 U.S.C. § 1332(a)(1).[2]  (*See id.*)  On November 15, the Mahars amended their complaint to add US Xpress as a party.  (*See* Am. Compl., Dkt. No. 5.) The defendants filed an answer and a counterclaim against Mahar for negligence, (*see* Dkt. No. 8), and a third-party complaint against Polsinello Fuels and Polsinello Fuels, Inc. for contribution and indemnification and for property damage,[3] (*see* Dkt. No. 24).  In response, Polsinello filed a counterclaim for damages sustained to its property.  (*See* Dkt. No. 25.)

After extensive discovery, a flurry of dispositive motions followed, including: Polsinello's motions for partial summary judgment and summary judgment, (Dkt. Nos. 109, 111); Morgan's motion for summary judgment,

_____

[2]None of the parties dispute that New York law controls here.  Accordingly, the court will apply New York State substantive law and federal procedural law.  *See Gasperini v. Ctr. for Humanities*, 518 U.S. 415, 427 (1996); *see also Hanna v. Plumer*, 380 U.S. 460, 473-74 (1965); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *McCarthy v. Olin Corp.*, 119 F.3d 148, 153 (2d Cir. 1997).

[3]By Stipulation and Order, Count One of the Amended Third-Party Complaint was dismissed on the merits.  (*See* Dkt. No. 100.)  However, Count Two, the claim for property damage, remains.  (*See* Am. 3d-Party Compl. ¶¶ 21-27, Dkt. No. 24.)

(Dkt. No. 113); US Xpress and Morgan's motion for summary judgment, (Dkt. No. 114); and the Mahars' motions for summary judgment, leave to amend, and sanctions, (Dkt. Nos. 116, 117).

In addition, US Xpress moved for summary judgment seeking dismissal of all claims against US Xpress Enterprises, Inc., US Xpress Leasing, Inc., and Xpress Global Systems, Inc. (*See* Dkt. No. 115.) By letter, both the Mahars and Polsinello conceded that these parties should be released and the claims against them dismissed. (*See* Dkt. Nos. 118, 130.) Accordingly, the court grants US Xpress's motion for summary judgment insofar as it pertains to dismissal of all claims against US Xpress Enterprises, Inc., US Xpress Leasing, Inc., and Xpress Global Systems, Inc. Polsinello likewise moves to dismiss Polsinello Fuels from this action because it is not an existing legal entity and therefore is not a party capable of being sued. (*See* Polsinello Mem. of Law, Dkt. No. 111:10.) In light of US Xpress and Morgan's concession that Polsinello Fuels should be dismissed, (*see* Def. Resp. Mem. of Law at 9, Dkt. No. 131:4), and without affecting the claims against Polsinello Fuels, Inc., the court grants Polsinello's summary judgment motion insofar as it concerns the claims against Polsinello Fuels as a non-entity.

8

### III.  **Standard of Review**

The standard for the grant of summary judgment is well established, and will not be repeated here.  For a full discussion of the standard, the court refers the parties to its previous opinion in *Bain v. Town of Argyle*, 499 F. Supp.2d 192, 194-95 (N.D.N.Y. 2007).

### IV.  **Discussion**

### A.    **Sufficiency of Service**

Morgan individually moves for summary judgment on the Mahars' claims based on an alleged failure to effectuate proper service.  (*See* Dkt. No. 113.)  However, because the failure to effectuate service is a matter related to personal jurisdiction, the defense to which Morgan has waived, and because the court prefers resolution of cases on their merits, Morgan's motion for summary judgment based on insufficient service of process is denied.

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."  *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987), *superseded by statute on other grounds*, Futures Trading Practices Act of 1992 § 211, Pub. L. No. 102-546, 106 Stat. 3590 (1992).

9

As a prerequisite to personal jurisdiction, the defendant must be amenable to service based on legislative authorization or consent.  *See id.* at 104. But, because personal jurisdiction is a privileged defense, "[i]t may be lost by failure to assert it seasonably, by formal submission in a cause, or by submission through conduct."  *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 168 (1939) (citation omitted).  And even where a defense of improper service is raised in a timely-filed answer, a defendant's significant delay in challenging by motion the inadequate service may nonetheless act as a waiver of that defense.[4]  *See Datskow v. Teledyne, Inc., Cont'l Prods. Div.*, 899 F.2d 1298, 1303 (2d Cir. 1990) (citing *Burton v. N. Dutchess Hosp.*, 106 F.R.D. 477 (S.D.N.Y. 1985) (three year delay), *and Vozeh v. Good Samaritan Hosp.*, 84 F.R.D. 143 (S.D.N.Y. 1979) (two year delay)). A finding of waiver is particularly appropriate where a defendant's amenability to personal jurisdiction is clear, where the defendant

---

[4]The distinctions between waiver and forfeiture are of no moment here.  *See United States v. Olano*, 507 U.S. 725, 733 (1993) ("Waiver is different from forfeiture.  Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." (internal quotation marks and citations omitted)).  Additionally, as the Second Circuit has noted, the issue of waiver or forfeiture is governed by federal procedural law.  *See Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 61 (2d Cir. 1999) (finding forfeiture where four years passed between the time when the defense was asserted in the answer and when the defense was raised in a motion, during which defendant joined other defendants in seeking transfer of action and considerable pretrial activity occurred including merits discovery and settlement conferences).

participated in the litigation during the period prior to expiration of the statute of limitations, and where the defect in service could have been easily cured during the limitations period.  *See id.*

Contrary to Morgan's contentions, and despite the subtle distinction between a defense based on personal jurisdiction and one based on insufficiency of service, *see Santos v. State Farm Fire & Cas. Co.*, 902 F.2d 1092, 1095 (2d Cir. 1990), the court finds that Morgan has waived her defense to improper service.  From the day defendants, including Morgan, filed their answer on December 12, 2006, to the day Morgan moved for summary judgment based on improper service on September 11, 2009, approximately two years and nine months passed.  Prior to and during this time, and before the statute of limitations expired, Morgan joined in filing a notice of removal, joined in filing several counterclaims and motions, engaged in discovery and pretrial conferences, and was deposed. However, during this time she did not move to dismiss based on improper service of process.  Furthermore, in addition to the fact that the defect in service could have been easily cured at various points in the pretrial proceedings, such as at her deposition, Morgan was clearly amenable to

personal jurisdiction.  Under the New York long-arm statute,[5] at the time

this action was instituted, specific jurisdiction existed over Morgan as a

non-domiciliary because the cause of action arises from a tortious act she

allegedly committed within New York State.  *See* N.Y. C.P.L.R. § 302(a)(2).

Therefore, for the above reasons, Morgan's delay in asserting a defense

for improper service constitutes waiver of that defense.  Accordingly,

Morgan's motion for summary judgment based on the Mahars' failure to

properly serve her with process is denied.

## B.  Leave to Amend

Rule 15(a) provides that where a party seeks to amend his pleading

before trial, "[t]he court should freely give leave when justice so requires."

FED. R. CIV. P. 15(a)(2).  "A motion to amend should be denied only for

such reasons as undue delay, bad faith, futility of the amendment, and

perhaps most important, the resulting prejudice to the opposing party."

*Richardson Greenshields Sec., Inc. v. Lau*, 825 F.2d 647, 653 n.6 (2d Cir.

1987) (internal quotation marks and citation omitted).  While a court has

---

[5]Personal jurisdiction is controlled by the law of the state where the district court sits, which is New York here.  *See Arrowsmith v. United Press Int'l*, 320 F.2d 219, 223-231 (2d Cir. 1963).  Consequently, service on an individual must be made by "following [New York] state law for serving a summons in an action brought in [New York] courts of general jurisdiction ...." FED. R. CIV. P. 4(e)(1).

discretion to grant or deny an opportunity to amend, "outright refusal to grant the leave without any justifying reason" is an abuse of discretion. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## 1.   Punitive Damages

First, the Mahars seek leave to file a second amended complaint to assert punitive damages.  US Xpress counters that the motion to amend is untimely, futile, and filed in bad faith, and that granting the amendment would cause undue delay and result in prejudice.

While mere delay is not a sufficient basis to deny the right to amend, prejudice may arise where the amendment is sought after discovery has closed and would create new problems of proof requiring additional discovery.  *See State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981); *see also Finlay v. Simonovich*, No. 97 CIV. 1455, 1997 WL 746460, at *1 (S.D.N.Y. Dec. 2, 1997).  Where there is "an inordinate delay" between the filing of the complaint and the motion to amend, then the party seeking to amend has the burden "to provide a satisfactory explanation for the delay."  *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990) (citations omitted).  Whether the movant seeks to assert mere variations of the original claims—including claims which the original

13

complaint may have forecasted or claims arising from the same set of operative facts—or entirely new claims is of particular importance.  *See Hanlin v. Mitchelson*, 794 F.2d 834, 841 (2d Cir. 1986).  Leave to amend may be denied where the movant appears to be raising a new claim in anticipation of an adverse ruling or to counteract a motion for summary judgment.  *See Ansam Assocs., Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 446 (2d Cir. 1985); *Byomen v. Herzog, Heine, Geduld, Inc.*, No. 88 Civ. 1796, 1991 WL 95387, at *1-2 (S.D.N.Y. May 28, 1991).

Here, while there was a considerable lapse in time from the date the Mahars filed their amended complaint, November 15, 2006, and the date they filed the pending motion to amend, September 11, 2009, US Xpress and Morgan have been on notice of the Mahars' intentions to file a second amended complaint to include punitive damages since December 2008. (*See* Dkt. No. 90.)  Although the delay between November 2006 and December 2008 is significant, the Mahars' have provided an adequate explanation to justify the delay—namely, that their claim for punitive damages was not substantiated until US Xpress's representatives were deposed in August 2008 and the expert discovery had been completed in November 2008.  (*See* Pl. Mem. of Law at 16, Dkt. No. 117:66.)

14

In addition, any delay is further softened when considered within the context of the pretrial proceedings.  First, the court has repeatedly amended the Uniform Pretrial Scheduling Order and extended discovery deadlines and motion deadlines.  Second, pursuant to its July 21, 2009 Order, the court allowed the Mahars to withdraw their initial motion to amend their complaint, (*see* Dkt. No. 98), and renew the motion to amend when they filed their dispositive motions.  (*See* Dkt. No. 106.)  Third, while the Mahars ultimately filed their motion to amend on the day US Xpress moved for summary judgment, they clearly contemplated amending long before the deadline for dispositive motions arrived.  Thus, the defendants' claims of undue delay, untimeliness, or bad faith are without merit.

As to futility, the allegations contained in the proposed Second Amended Complaint satisfy the punitive damages standard.  Contrary to US Xpress's contention that the Mahars' proposed amendments do not contain any facts which would support a finding for punitive damages, the Mahars allege that US Xpress was grossly negligent, wanton, and reckless in its ownership, maintenance, use, and operation of the tractor by, among other things, failing to remedy known problems with the tractor, allowing a failing and defective truck to continue to operate, and ignoring numerous

warnings, data, and information regarding the truck's operational problems.
(*See* Proposed 2d Am. Compl. ¶¶ 54-57, Dkt. No. 117:37.)  The Mahars
further allege that US Xpress was "grossly negligent, wanton and reckless
in the hiring, training, supervision, direction[,] control, and instruction of
[Morgan]" and that US Xpress put Morgan, as an inexperienced and
improperly trained driver, behind the wheel of a truck that was known to be
defective.  (*See id.* at ¶¶ 57, 72.)  These averments are sufficient to raise a
claim for punitive damages as they adequately demonstrate a high degree
of moral culpability or flagrance that transcends mere carelessness, or
willful or wanton negligence or recklessness evidencing a conscious
disregard of the rights of others.  *See Evans v. Stranger*, 307 A.D.2d 439,
441 (3d Dep't 2003); *see also Rey v. Park View Nursing Home, Inc.*, 262
A.D.2d 624, 627 (2d Dep't 1999).  Moreover, the Mahars have submitted
sufficient evidence to permit a reasonable jury to return a verdict for
punitive damages.[6]  Accordingly, US Xpress's claim of futility must be

---

[6]Because the Mahars intended to amend prior to the time when dispositive motions
became due, it is unclear whether the court must employ the Rule 12(b)(6) standard of review
to the issue of futility, *see Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991),
*superseded on other grounds*, *Leatherman v. Tarrant County Narcotics Intelligence &
Coordination Unit*, 507 U.S. 163 (1993), and thereby restrict itself to the facts alleged in the
complaint and the documents attached as exhibits or incorporated by reference, *see Cosmas
v. Hassett*, 886 F.2d 8, 13 (2d Cir. 1989), or whether the court should employ the standard for
summary judgment, *see Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001).
Regardless, the procedural distinction is of no consequence here since the Mahars' proposed

rejected.

Most importantly, although discovery has closed, the introduction of a punitive damages claim would not create any serious, unforeseen prejudice or problems of proof requiring extensive supplemental discovery. Rather, the claim of punitive damages derives from the same set of operative facts as the claim for negligent hiring, training, and supervision, which was pleaded shortly after removal in the First Amended Complaint. Thus, the Mahars' original claim of negligent hiring, training, and supervision served as a forecast of the punitive damages claim, for, as the court will discuss further below, the limited exception that allows a party to sue an employer for negligence in hiring, training, or supervision essentially requires the party to establish entitlement to punitive damages. Accordingly, any prejudice is either minimal or nonexistent.

Therefore, for these reasons, the court grants the Mahars' motion to amend their complaint to assert a claim for punitive damages.

## 2.    Ad Damnum Clause

Second, the Mahars move for leave to amend their complaint to increase the ad damnum clause. In response, US Xpress contends that

_____

amendment satisfies either standard.

this motion should be denied as it is unnecessary because there is no requirement under either the Federal Rules of Civil Procedure or New York Civil Practice Law and Rules to assert a specific amount of relief in a personal injury action.

"In the federal courts, the amount of damages found by a jury is not limited to that amount set forth in the complaint as the requested relief." *Roorda v. Am. Oil Co.*, 446 F. Supp. 939, 948 (W.D.N.Y. 1978). Accordingly, "[a]mendments to increase an ad damnum clause are liberally permitted, absent prejudice to a party." *Violette v. Armonk Assocs., L.P.*, 849 F. Supp. 923, 930 (S.D.N.Y. 1994) (citations omitted); *see, e.g.*, *Greenspon v. Supermarkets Gen. Corp.*, 744 F. Supp. 77, 78 (S.D.N.Y. 1990) (finding amendment to ad damnum clause, increasing compensatory damages from one to four million dollars, not prejudicial because defendant had "always been aware that the plaintiff ... might have significant consequences" from the accident); *Varveris v. U.S. Lines Co.*, 141 F. Supp. 874, 875 (S.D.N.Y. 1956) (finding no prejudice where amendment "merely raises the outer limits of recovery").

Accordingly, because it would not be prejudicial to US Xpress, who was already on notice that Mahar may have suffered serious injuries from

the accident, and because of the developing nature of those injuries, the

court grants the Mahars' motion to amend their complaint to increase the

ad damnum clause.

**C.**   **Negligence**

**1.**   **Negligent Use and Operation**

Under New York law, "where a vehicle is lawfully stopped, there is a

duty imposed upon the operators of vehicles traveling behind it in the same

direction to come to a timely halt."  *Edney v. Metro. Suburban Bus Auth.*,

178 A.D.2d 398, 399 (2d Dep't 1991) (citations omitted).  In order to avoid

colliding with stopped vehicles, a driver who approaches another vehicle

from the rear is required to maintain a reasonably safe distance, rate of

speed, and control of his vehicle, to use reasonable care, and to take into

account the weather and road conditions.  *See Young v. City of New York*,

113 A.D.2d 833, 834 (2d Dep't 1985); *Mitchell v. Gonzalez*, 269 A.D.2d

250, 251 (1st Dep't 2000).  Accordingly, "[a] rear-end collision with a

stopped automobile creates a prima facie case of liability," which imposes a

duty on the operator of the moving vehicle to provide a non-negligent

explanation for the cause of the collision.  *Hurley v. Izzo*, 248 A.D.2d 674,

675 (2d Dep't 1998) (citations omitted).

19

Failure to rebut an inference of negligence entitles the driver of the stopped vehicle to judgment as a matter of law. *See Arias v. Rosario*, 52 A.D.3d 551, 552 (2d Dep't 2008); *see also, e.g.*, *Rodriguez v. City of New York*, 259 A.D.2d 280 (1st Dep't 1999) (holding that driver's failure to maintain a safe driving speed and distance on wet, foggy night was the proximate cause where no evidence that the driver of the car stopped in middle lane was negligent in failing to restart her vehicle or take other precautionary steps); *Warren v. Donovan*, 254 A.D.2d 201, 201 (1st Dep't 1998) (finding explanation inadequate where driver testified that his vehicle hydroplaned in foggy and rainy weather conditions, which were "known adverse conditions that should have been compensated for"); *Crociata v. Vasquez*, 168 A.D.2d 410, 411 (2d Dep't 1990) (finding explanation inadequate where driver testified that his attention was diverted when he suddenly saw the stopped car and slid into it because the roadway was wet). However, "[a] sudden, negligent, or unexplained stop of the lead vehicle can constitute a non-negligent explanation because the lead driver has a duty not to stop suddenly ... without proper signaling so as to avoid a collision when there is opportunity to give such signal." *John v. Leyba*, 38 A.D.3d 496, 496 (2d Dep't 2007) (citations omitted). "Thus, where the

20

frontmost driver also operates his vehicle in a negligent manner, the issue of comparative negligence is for a jury to decide." *Id.* (citations omitted); *see, e.g.*, *Purcell v. Axelsen*, 286 A.D.2d 379, 380 (2d Dep't 2001) (upholding jury verdict of contributory fault due to disputes of fact regarding whether the driver of the lead vehicle stopped in the middle of the roadway without giving a proper signal, whether she pulled over to the shoulder, whether she activated her emergency flashers, and whether her brake lights came on); *Riley v. County of Broome*, 256 A.D.2d 899, 899-900 (3d Dep't 1998) (denying summary judgment where driver who rear-ended street sweeper testified that she did not see the street sweeper due to the cloud of dust and dirt it created, which she believed was fog, and did not observe any illuminated lights or flashers); *De Cosmo v. Hulse*, 204 A.D.2d 953, 954 (3d Dep't 1994) (denying summary judgment where defendant testified to observing plaintiff's vehicle at all times and where plaintiff's vehicle came to a sudden stop for no apparent reason).

New York common law provides that "a person is negligent when he fails to exercise that degree of care which a reasonably prudent person would have exercised under the same circumstances." *See Dance v. Town of Southampton*, 95 A.D.2d 442, 445 (2d Dep't 1983). "[A]n

21

unexcused violation of a statutory standard of care, if unexplained, constitutes negligence per se." *Dalal v. City of New York*, 262 A.D.2d 596, 597 (2d Dep't 1999). For instance, where a section of the New York Vehicle and Traffic Law relates to the operation of a vehicle, it creates a statutory standard of care. *See id.*; *see also Martin v. Herzog*, 228 N.Y. 164, 168 (N.Y. 1920). Still, "[e]vidence of negligence is not enough by itself to establish liability." *Sheehan v. City of New York*, 40 N.Y.2d 496, 501 (N.Y. 1976); *see also Dance*, 95 A.D.2d at 445 ("Negligence per se is not liability per se ...."). Rather, it must be proved that the negligence was the cause of the event which produced the harm alleged. *See Sheehan*, 40 N.Y.2d at 501. And even where "the negligence charged is premised in part or in whole on a claim that a statute or ordinance ... has been violated," proximate cause is still an essential element of liability. *Id.* (citations omitted); *see also Martin*, 228 N.Y. at 170 ("To say that conduct is negligence is not to say that it is always contributory negligence."). Thus, "[t]he damage must be the proximate result of the negligent act. It must be such as the ordinary mind would reasonably expect as a probable result of the act ...." *Hoffman v. King*, 160 N.Y. 618, 627 (N.Y. 1899).

Here, upon review of the pleadings, answers to interrogatories,

depositions, affidavits, admissions on file, and other evidence, the court is satisfied that genuine issues of material fact remain as to the negligence of Mahar, Morgan, Polsinello, and US Xpress.[7]

First, Morgan and US Xpress have demonstrated that Mahar had a duty to maintain a reasonably safe distance and speed and use reasonable care, taking into account the weather and road conditions, and that Mahar may have been negligent because he breached that duty by rear-ending Morgan's stopped tractor-trailer.  And the evidence is such that a rational trier of fact could find that Mahar's negligence proximately caused the accident and that the resulting harm was foreseeable.  In response, Mahar has provided sufficient evidence to overcome an inference of negligence and allow a jury to conclude that he was not negligent in causing the collision due to the road conditions, the weather and visibility, and Morgan's negligent acts or omissions.

Second, in reliance on New York Vehicle and Traffic Law, Mahar has demonstrated that Morgan may have violated a statutory standard of care without explanation, that this breach of duty may have proximately caused

---

[7]While the parties engage in debates about the credibility of fact and expert witnesses, the reasonableness of the testimony, the nature of the evidence, and the conclusions that should be reached, such matters are better left to a jury to resolve.

the collision, and that the injuries Mahar suffered were foreseeable under

the circumstances.  Specifically, New York Vehicle and Traffic Law

provides that "no person shall stop, park, or leave standing any vehicle ...

upon the paved or main-traveled part of the highway when it is practicable

to stop, park, or so leave such vehicle off such part of said highway ...."

N.Y. VEH. & TRAF. LAW § 1201(a).  However, questions of material fact

remain as to whether it was "practicable" for Morgan not to stop her tractor

in the right lane of I-87.  The statute also provides that if a vehicle is

stopped, parked, or left standing, "an unobstructed width of the highway

opposite a standing vehicle shall be left for the free passage of other

vehicles and a clear view of such stopped vehicles shall be available from

a distance of two hundred feet in each direction upon such highway."  *Id.*

Based on the fog and the additional circumstances particular to the stretch

of highway in question here, it is disputed whether Morgan left other drivers

with a clear view of her tractor-trailer from a distance of two-hundred feet.

In addition, while there are exceptions where "it is impossible to avoid

stopping and temporarily leaving such disabled vehicle in such position,"

*see* N.Y. VEH. & TRAF. LAW § 1201(b), or in the case of an emergency, *see*

N.Y. VEH. & TRAF. LAW § 1202(a)(1)(j), the parties dispute whether it was

impossible for Morgan to avoid stopping in the right lane of travel and whether she was engaged in an emergency situation.

Third, genuine issues of material fact remain as to the road-worthiness of Morgan's tractor, whether Morgan and/or US Xpress knew or should have known about the alleged patent and latent problems, and whether any of the alleged problems caused or contributed to the collision.

## 2.   Vicarious Liability

"Under the doctrine of respondeat superior, an employer may be vicariously liable for the tortious acts of its employees only if those acts were committed in furtherance of the employer's business and within the scope of employment."  *N.X. v. Cabrini Med. Ctr.*, 97 N.Y.2d 247, 251 (N.Y. 2002) (citation omitted); *see also Riviello v. Waldron*, 47 N.Y.2d 297, 303 (N.Y. 1979) ("[T]he test has come to be whether the act was done while the servant was doing his master's work, no matter how irregularly, or with what disregard of instructions." (internal quotation marks and citation omitted)).  Thus, as long as the employee was not acting "solely for personal motives unrelated to the furtherance of the employer's business," an employer may be held vicariously liable "even when the employee's actions are intentional."  *Vega v. Northland Mktg. Corp.*, 289 A.D.2d 565,

25

566 (2d Dep't 2001) (citations omitted); *see also Flowers v. N.Y. City Transit Auth.*, 267 A.D.2d 132, 132 (1st Dep't 1999) (holding that an employer cannot be vicariously liable where employee's actions constituted "such a wide departure from [the] normal method of performance as not to be reasonably anticipated by defendant").

Here, there is no dispute that, at the time of the collision, Morgan was acting within the scope of her employment with US Xpress and in furtherance of US Xpress's business.  Likewise, there is no dispute that Mahar was acting within the scope of his employment with Polsinello and in furtherance of Polsinello's business.  Accordingly, under the broad doctrine of respondeat superior, and because neither employer suggests or offers any proof to suggest that its employee acted solely for personal motives or unforeseeably departed from the normal method of performance, the court concludes that US Xpress and/or Polsinello may be held vicariously liable for the tortious acts committed by their respective employees, Morgan and Mahar, regarding the January 3, 2005 collision.

**3.    Negligent Hiring, Training, and Supervision**

In general, "[w]here an employee is acting within the scope of his or her employment, the employer is liable under the theory of respondeat

superior and no claim may proceed against the employer for negligent hiring or retention." *Rossetti v. Bd. of Educ. of Schalmont Cent. Sch. Dist.*, 277 A.D.2d 668, 670 (3d Dep't 2000) (citations omitted). The rationale for this restriction is that if the employee is found negligent, then the employer must pay the judgment regardless of the reasonableness of the hiring, training, or supervision, whereas if the employee was not negligent, there should be no basis for imposing liability on the employer. *See Karoon v. N.Y. City Transit Auth.*, 241 A.D.2d 323, 324 (1st Dep't 1997); *see also Lee v. J.B. Hunt Transp., Inc.*, 308 F. Supp.2d 310, 312-13 (S.D.N.Y. 2004) ("The application of the theory of independent negligence in hiring or retaining an employee becomes important in cases where the act of the employee was not, or may not have been, within the scope of his employment ... *where no liability would otherwise exist.*"). Nonetheless, a limited exception exists where the injured party is seeking punitive damages from the employer based on gross negligence in hiring, training, or supervising the employee. *See Karoon*, 241 A.D.2d at 324. Punitive damages are only warranted where the conduct "evidences a high degree of moral culpability, [or] is so flagrant as to transcend simple carelessness, or constitutes willful or wanton negligence or recklessness so as to

27

evidence a conscious disregard of the rights of others." *Evans*, 307 A.D.2d

at 441 (citations omitted); *cf. Prozeralik v. Capital Cities Commc'ns, Inc.*, 82

N.Y.2d 466, 479 (N.Y. 1993) (holding in defamation action that an award of

punitive damages requires "circumstances of aggravation or outrage, such

as spite or malice, or a fraudulent or evil motive on the part of the

defendant, or such a conscious and deliberate disregard of the interests of

others that the conduct may be called willful or wanton") (internal quotation

marks and citation omitted).  In addition, a necessary element for negligent

hiring, training, or supervision is that the employer "knew or should have

known of the employee's propensity for the conduct which caused the

injury."  *Kenneth R. V. Roman Catholic Diocese of Brooklyn*, 229 A.D.2d

159, 161 (2d Dep't 1997).

　　As a preliminary matter, despite the somewhat undefined nature of

the exception for gross negligence in hiring, training, or supervision, the

court is persuaded that while a party must plead conduct sufficient to

warrant punitive damages, the party is not required to specifically plead

"punitive damages" to sustain a cause of action for negligent hiring,

training, or supervision.[8]  *See Gill v. Montgomery Ward & Co.*, 284 A.D. 36, 40 (3d Dep't 1954); *cf. Norfolk & Portsmouth Traction Co. v. Miller*, 174 F. 607, 610 (4th Cir. 1909) ("While punitive damages need not be demanded eo nomine ... the facts showing a right to recover such damages must be set out ....").  The court finds support for this conclusion in the New York rule that "a demand for punitive damages does not amount to a separate cause of action for pleading purposes."  *Rose Lee Mfg., Inc. v. Chem. Bank*, 186 A.D.2d 548, 550 (2d Dep't 1992) (citations omitted).

Notwithstanding this legal construction, US Xpress and Morgan have failed to provide sufficient factual support for their claim of negligent hiring, training, and supervision.  While their failure to plead "punitive damages" is inconsequential for the reasons just discussed, US Xpress and Morgan have neither alleged nor provided adequate evidence to allow a rational jury to find that Polsinello negligently hired, trained, or supervised Mahar.  The record is devoid of any evidence demonstrating that Mahar had a propensity to operate a tractor-trailer in the negligent manner alleged or

---

[8]The factual and legal circumstances presented here justify a limited departure from the general proposition that "any claim for punitive damages must be raised in the pleadings." *Mendoza v. City of Rome, N.Y.*, 872 F. Supp. 1110, 1125 (N.D.N.Y. 1994) (citing FED. R. CIV. P. 8(a)) (finding waiver of pleading requirements where punitive damages issue had already been tried and the jury already returned a verdict on liability).

that Polsinello knew or should have known of any such propensity.  US

Xpress and Morgan's lone reliance on the testimony of Judith Polsinello,

Director of Human Services for Polsinello, indicating that Polsinello as a

motor carrier did not fully comply with federal regulations requiring an

annual review and update of Mahar's driving record and personnel file is

insufficient to create a material question of fact, especially where there is

no evidence suggesting that such a review would have revealed any stain

on his record.[9]  And despite US Xpress and Morgan's attempts to construe

Ms. Polsinello's testimony to create a triable dispute, the court is unable to

find any evidence demonstrating that Mahar may have lacked the

appropriate qualifications and training or that Polsinello may have been

grossly, willfully, or wantonly negligent in hiring, training, or supervising

Mahar.

In contrast, however, Mahar has submitted enough evidence on his

claim against US Xpress for negligent hiring, training, and supervision to

survive the summary judgment stage.  While the court has reviewed

Mahar's proposed pleadings and already determined that he has raised a

---

[9]It is noteworthy that during her deposition, Judith Polsinello testified that Polsinello's insurance company does perform annual reviews of Polsinello's drivers.  (*See* Wescoe Aff., Ex. B, Judith Polsinello Dep. at 17, Dkt. No. 131:2.)

material issue of genuine fact as to whether US Xpress negligently hired,

trained, and supervised Morgan, further elaboration on this determination is

warranted.  The record evidence, viewed in the light most favorable to

Mahar as the nonmoving party, could allow a reasonable jury to find that

the tractor Morgan was operating had significant mechanical problems that

US Xpress was aware of or should have been aware of during the weeks

leading up to the accident.  Not only is there a question as to what

warnings Morgan and US Xpress received or should have received in the

days preceding the accident, there is evidence that: (1) US Xpress was

aware of the mechanical problems alleged to be at fault here, namely the

failing cooling system fan; (2) US Xpress continued to receive notices

about the failing condition of the tractor during the days before the

accident; and (3) the electronic control module (ECM) data, Detroit Diesel

electronic controls (DDEC) data, and other diagnostic records may have

revealed that the tractor was operating in an erratic, unstable, or alarming

manner.  In addition, a jury could conclude that US Xpress, aware of these

conditions, was grossly or wantonly negligent or reckless in putting the

tractor on the road and under the operation of an inexperienced driver.

Specific to Morgan's experience and training, there is evidence that raises

questions as to whether Morgan was: (1) able to adequately perform a pre-trip inspection and assess the tractor's conditions; (2) properly trained to respond to the warnings and indications she received; (3) aware of the measures available to override the shutdown of her engine; and (4) familiar with the proper steps to be taken after her tractor shut down.  Accordingly, these facts considered in the aggregate would allow a reasonable jury to find that US Xpress knew or should have known that Morgan was prone to act negligently based on her deficient training and supervision, and that US Xpress thereby acted with willful or wanton negligence or recklessness in conscious disregard of others' rights by authorizing Morgan to operate the tractor.

Therefore, Polsinello's motion for summary judgment on US Xpress and Morgan's claim of negligent hiring, training, and supervision is granted. However, US Xpress's motion for summary judgment on Mahar's claim of negligent hiring, training, and supervision is denied.

**D.   Collateral Damages Issues**

**1.   Costs of Preservation**

US Xpress seeks damages for the costs incurred in preserving tractor-trailer 40035 in compliance with a March 15, 2005 Order issued by

Judge James P. Dawson of the New York State Supreme Court, Essex County.  (*See* Berstein Aff., Ex. J, Dkt. No. 109:12.)  Specifically, US Xpress seeks towing and storage costs in the amount of $66,558.69.  (*See* Ford Aff., Ex. E, Dkt. No. 109:3.)  In response, Polsinello moves for summary judgment on these costs based on, among other things, the fact that US Xpress had a duty to preserve the tractor-trailer and accordingly was required to bear any expenses resulting from its compliance with the order and with discovery requirements.

A party is obligated to preserve evidence in its possession and not engage in spoliation[10] when it "has notice that the evidence is relevant to litigation ... [or] when a party should have known that the evidence may be relevant to future litigation."  *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998) (citation omitted), *overruled on other grounds*, *Rotella v. Wood*, 528 U.S. 549 (2000).  Thus, every party has "a duty to preserve what it knows, or reasonably should know, is relevant in the action, ... is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request."  *Turner v. Hudson Transit Lines, Inc.*, 142

---

[10]"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation."  *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999) (citation omitted).

F.R.D. 68, 72 (S.D.N.Y. 1991) (internal quotation marks and citation omitted).  This obligation may arise before a complaint is filed where a party is on notice that litigation is likely to be commenced, *see id.* at 73, or where a court orders that the evidence be preserved, *see Metlife Auto & Home v. Joe Basil Chevrolet, Inc.*, 1 N.Y.3d 478, 484 (N.Y. 2004).

In general, "the presumption is that the party possessing [evidence] must bear the expense of preserving it for litigation."  *Treppel v. Biovail Corp.*, 233 F.R.D. 363, 373 (S.D.N.Y. 2006); *see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978); *Clever View Invs., Ltd. v. Oshatz*, 233 F.R.D. 393, 394 (S.D.N.Y. 2006) ("[T]he party responsible for production generally bears the cost.").  This presumption may be overcome if the demanding party seeks preservation of evidence that is likely to be of marginal relevance and is costly to retain and preserve, or where a non-party is in possession of the requested evidence.  *See Treppel*, 233 F.R.D. at 373; *see also Capricorn Power Co., Inc. v. Siemens Westinghouse Power Corp.*, 220 F.R.D. 429, 436 (W.D. Pa. 2004).  In these limited circumstances, the court may order preservation on the condition that the demanding party assume part or all of the related expenses.  *See Oppenheimer Fund, Inc.*, 437 U.S. at 358.  To this end, both FED. R. CIV. P.

26(c) and N.Y. C.P.L.R. § 3103 allow a party to seek a cost-shifting protective order where that party can demonstrate undue or unreasonable expense. And motions for a protective order must be made in a timely manner, which ordinarily means that the motion must be made by the date set for the discovery or production unless there was no opportunity to so move. *See United States v. IBM Corp.*, 70 F.R.D. 700, 701 (S.D.N.Y. 1976); *see also Ayers v. Cont'l Cas. Co.*, 240 F.R.D. 216, 221 (N.D. W.Va. 2007); *Ehrlich v. Inc. Village of Sea Cliff*, No. CV04-4025, 2007 WL 1593241, at *4 (E.D.N.Y. June 1, 2007).

Here, US Xpress was under a two-fold obligation to preserve tractor-trailer 40035. First, it is clear that US Xpress should have known that the tractor-trailer was particularly relevant to future litigation and that it was therefore legally obligated to preserve the tractor in its post-accident condition. Second, Judge Dawson's March 15, 2005 Order provided US Xpress with explicit notice of its duty to preserve the tractor-trailer. As a result, because the tractor-trailer was under its control and was constructively in its possession, US Xpress is presumed to be responsible for any and all expenses incurred in preserving it for litigation. US Xpress had ample opportunity to move for an order of protection with Judge

35

Dawson prior to removal or with this court after October 25, 2006.

However, US Xpress failed to file such a motion.  And while US Xpress

stated in its opposition papers to the March 15 Order that it would suffer

substantial economic losses if prevented to repair and use tractor 40035,

this was insufficient to outweigh the parties' interests in preserving the

evidence.  Moreover, neither the state court nor this court was under any

obligation to construe US Xpress's opposition papers as a motion for a

protective order.  Furthermore, upon review of US Xpress's current

arguments, the court is unable to find any factual or legal reason,

explanation, or excuse that would justify shifting the preservation costs to

either Polsinello or Mahar.

Nevertheless, should US Xpress ultimately prevail on its claims

against Polsinello and/or Mahar, it may be entitled to recover damages for

reasonable storage and transportation costs inasmuch they were not the

result of US Xpress's delay or failure to mitigate.  *See Mooney v.*

*Nationwide Mut. Ins. Co.*, 172 A.D.2d 144, 149 (3d Dep't 1991).  Thus,

because the nature of the towing and storage costs is in dispute,

Polsinello's motion for summary judgment regarding these costs is denied.

**2.    Loss of Use**

US Xpress also seeks damages in the amount of $129,584.00 for loss of use of tractor 40035 during the time it was out of service.  (*See* Ford Aff., Ex. E, Dkt. No. 109:3.)  Polsinello counters with a motion for summary judgment, contending that the loss of use was the result of either the preservation requirements or US Xpress's subsequent delay in repairing or using the tractor.  (*See* Polsinello Mem. of Law at 11, Dkt. No. 109:15.)  Polsinello also asserts that US Xpress has not provided adequate proof of damages for loss of use.

Where a party loses use of its vehicle as the result of an accident, it may be entitled to recover damages for loss of use.  In order to prove a claim for loss of use, the owner must "offer expert testimony as to the cost of renting a replacement vehicle for the period reasonably required to make repairs to [the] damaged vehicle."  *Roundtree v. Singh*, 143 A.D.2d 995, 995 (2d Dep't 1988).  As part of this showing, the owner must provide proof that the rental period was reasonable and that there was no undue delay in repairing or other failure to mitigate losses.  *See id.*; *see also Hoover v. Montanus*, 108 Misc.2d 916, 918 (N.Y. Sup. Ct. 1981) (citing, *inter alia*, *Livingston v. Knight*, 90 Misc.2d 941, 943 (N.Y. Sup. Ct. 1976)).  And while there is some dispute among New York courts as to whether a replacement

37

vehicle must be utilized and whether actual losses must be suffered,[11] it is well settled that, unless the owner can prove that it was unable to obtain a suitable substitute, the reasonable rental cost of a replacement is the appropriate measure of loss of use damages.  *See Kuwait Airways Corp. v. Ogden Allied Aviation Servs.*, 726 F. Supp. 1389, 1396-98 (E.D.N.Y. 1989); *see also Koninklijke Luchtvaart Maatschaapij, N.V. v. United Techs. Corp.*, 610 F.2d 1052, 1055-58 (2d Cir. 1979).

While the parties dispute what the appropriate measure for loss of use damages is, it seems clear that reasonable rental cost, and not lost profits, is the correct measure since US Xpress does not offer any proof suggesting that it was unable to obtain a suitable substitute for the damaged tractor.  However, questions of material fact remain as to whether and to what extent US Xpress is entitled to loss of use damages and to what extent each party was responsible for the delay in repairing the tractor.  Thus, Polsinello's motion for summary judgment is denied regarding loss of use damages.

---

[11]*Compare Mountain View Coach Lines, Inc. v. Gehr*, 80 A.D.2d 949 (3d Dep't 1981) (dismissing claim for loss of use where plaintiff did not hire a replacement vehicle and did not incur any lost profits or diminution of services to customers during repair period), *with Mountain View Coach Lines, Inc. v. Storms*, 102 A.D.2d 663 (2d Dep't 1984) (holding that plaintiff who did not hire a substitute bus but rather used one of its reserves could still recover for loss of use).

### 3.    Cleanup Costs

US Xpress further seeks reimbursement for costs incurred in cleaning up the accident site.  However, Polsinello contends that US Xpress cannot recover these costs because they arose out of a voluntary settlement agreement with New York State.

Under New York law, "[a] tortfeasor who has obtained [its] own release from liability shall not be entitled to contribution from any other person."  N.Y. GEN. OBLIG. LAW § 15-108(c).  Accordingly, "[t]he settling tortfeasor is relieved from liability to any other person for contribution but, in exchange, is not entitled to obtain contribution from any other tortfeasor."  *Gonzales v. Armac Indus., Ltd.*, 81 N.Y.2d 1, 5 (N.Y. 1993) (citation omitted).  Thus, a tortfeasor who pays to limit its exposure to liability may not press a contribution claim against another tortfeasor who was not a party to the release agreement.  *See id.* at 6; *see also DMJ Assocs. v. Capasso*, No. 97-CV-7285, 2008 WL 4515799, at *2 (E.D.N.Y. Oct. 2, 2008) ("Courts should bar third-party contribution claims brought by settling defendants who, by settlement with the plaintiff, effectively avoided any further litigation of the claims against them." (internal quotation marks and citation omitted)).

Despite US Xpress's characterization of the cleanup costs as "merely a reimbursement for damages sustained as a result" of the accident, (*see* Def. Resp. Mem. of Law at 8, Dkt. No. 133:4), it is clear that US Xpress entered into an agreement with New York State to pay the cleanup costs in exchange for a release from any future claims for damage to New York State property, (*see* Ford Aff., Ex. E, Dkt. No. 109:3).  Specifically, under the agreement, which was titled "Release of Property Damage Claim," US Xpress paid $3,671.88 in "consideration" for the "release, acquit[tal] and forever discharge ... from claims for damage to New York State Property as a result of [the] accident which occurred southbound on [Interstate] 87 milepost 114, Elizabethtown, Essex County, New York on January 3, 2005." (*Id.*)  As a settling tortfeasor who has obtained its release from liability for the cleanup, US Xpress is barred from seeking contribution from Polsinello or Mahar.  Therefore, Polsinello's motion for summary judgment is granted insofar as US Xpress's New York State damage claim for $3,671.88 is concerned.

**E.** **Sanctions**

A court has authority to sanction a party under Rule 11(c) if it determines that the party has made false, misleading, improper, or

frivolous representations to the court in violation of Rule 11(b).  *See Williamson v. Recovery Ltd. P'ship*, 542 F.3d 43, 51 (2d Cir. 2008).  "Rule 11 explicitly and unambiguously imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed." *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 253 (2d Cir. 1985).  However, sanctions should be imposed cautiously, *see Knipe v. Skinner*, 19 F.3d 72, 78 (2d Cir. 1994), and only if "it is patently clear that a claim has absolutely no chance of success ... resolv[ing] all doubts in favor of the sign[ing attorney]." *Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993) (internal quotation marks and citations omitted).  Thus, "[a] distinction must be drawn between a position which is merely losing, and one which is both losing and sanctionable." *Sec. Indus. Ass'n v. Clarke*, 898 F.2d 318, 321 (2d Cir. 1990) (internal quotation marks and citation omitted), *overruled on other grounds*, *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990).

At the threshold, "[a] motion for sanctions must be made separately from any other motion." FED. R. CIV. P. 11(c)(2).  Compliance with this procedural prerequisite is mandatory.  *See Williamson*, 542 F.3d at 51-52; *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1328-29 (2d Cir. 1995).

41

Here, it is readily apparent that the Mahars have failed to satisfy the Rule 11 requirements.  While the court acknowledges plaintiffs' counsel's confusion created by his reading of the November 26, 2008 Order, (*see* Dkt. No. 87), the court is unable to give the Order any reading which would suggest that Rule 11's mandatory prerequisites were waived or abandoned so as to justify the Mahars' failure to file the motion for sanctions separately from their motion for summary judgment.

Nonetheless, upon review of the merits, the court denies the Mahars' motion for sanctions, including their request to strike US Xpress's answer under Rules 11(c)(4) and 26(g).  The Mahars' motion for sanctions and to strike US Xpress's pleading essentially boils down to a claim that US Xpress's assertion of the "sudden emergency" defense is so lacking in factual support that it is unreasonable.  Yet, in light of the evidence available, US Xpress's reliance on the emergency defense is objectively reasonable.  Moreover, the court is hard-pressed to find any acts or omissions by US Xpress or its counsel that could be deemed sanctionable.  Rather, it appears that the Mahars are simply trying to reargue their motion for summary judgment in the context of sanctions.  Accordingly, the Mahars' motion for sanctions and to strike US Xpress's answer is denied.

## V.  **Conclusion**

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Polsinello's motion for partial summary judgment (Dkt. No. 109) is **GRANTED** insofar as US Xpress's claim for New York State cleanup costs is **DISMISSED**; and it is further

**ORDERED** that Polsinello's motion for partial summary judgment (Dkt. No. 109) is **DENIED** in part as to US Xpress's remaining claims for towing, storage, and loss of use damages; and it is further

**ORDERED** that Polsinello's motion for summary judgment (Dkt. No. 111) is **GRANTED** insofar as "Polsinello Fuels" is **DISMISSED** from the action and US Xpress and Morgan's claim against Polsinello for negligent hiring, training, and supervision is **DISMISSED**; and it is further

**ORDERED** that Polsinello's motion for summary judgment (Dkt. No. 111) is **DENIED** in part as to the claims of negligence and vicarious liability; and it is further

**ORDERED** that Morgan's motion for summary judgment (Dkt. No. 113) based on improper or insufficient service is **DENIED**; and it is further

**ORDERED** that US Xpress and Morgan's motion for summary judgment (Dkt. No. 114) is **DENIED** as to the claims of negligence,

43

vicarious liability, and negligent hiring, training, and supervision; and it is further

     **ORDERED** that US Xpress's motion for summary judgment (Dkt. No. 115) is **GRANTED** and US Xpress Enterprises, Inc., US Xpress Leasing, Inc., and Xpress Global Systems, Inc. are **DISMISSED** from the action; and it is further

     **ORDERED** that the Mahars' motion for summary judgment (Dkt. No. 116) is **DENIED** as to the claims of negligence and vicarious liability; and it is further

     **ORDERED** that the Mahars' motion for leave to amend (Dkt. No. 116) is **GRANTED**; and it is further

     **ORDERED** that the Mahars' Second Amended Complaint is to be filed with this court and served upon the parties within ten (10) days from the filing of this Order on March 8, 2010, after which US Xpress and Morgan will be permitted twenty-one (21) days to file an answer and any related motions; and it is further

     **ORDERED** that the Mahars' motion for sanctions is **DENIED**; and it is further

     **ORDERED** that the Clerk provide a copy of this Memorandum-

44

Decision and Order to the parties.

**IT IS SO ORDERED.**

February 24, 2010
Albany, New York

United States District Court Judge